**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0275-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS M. WINTON,

     Defendant-Appellant.

_____

Submitted December 16, 2019 – Decided March 20, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 10-06-1049.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Thomas M. Winton appeals from an order denying his petition for post-conviction relief (PCR) without an evidentiary hearing, arguing:

> POINT I
>
> AS DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, HE WAS ENTITLED TO POST-CONVICTION RELIEF.
>
> (1)    TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO PROPERLY OBJECT TO THE ADMISSION OF THE STAFFORD CAD REPORT.[1]
>
> (2)    TRIAL COUNSEL FAILED TO CONTEST THE AUTHENTICITY AND ACCURACY OF THE STAFFORD CAD REPORT.
>
> (3)    TRIAL COUNSEL FAILED TO CALL THE BOOKING OFFICER REGARDING HIS BLACK EYE.
>
> (4)    TRIAL COUNSEL FAILED TO ADEQUATELY CROSS-EXAMINE [THE PURSUING POLICE SERGEANT] ABOUT HIS USE OF FORCE REPORT.

---

[1] CAD is an acronym for a computer-aided dispatch program. See State v. Chisum, 236 N.J. 530, 538 (2019). "CAD systems allow public safety operations and communications to be augmented, assisted, or partially controlled by an automated system. It can include, among other capabilities, computer-controlled emergency vehicle dispatching, vehicle status, incident reporting, and management information." Law Enforcement Information Technology Standards Council, Standard Functional Specifications for Law Enforcement Computer Aided Dispatch (CAD) Systems, JUSTICE INFORMATION SHARING viii, https://www.it.ojp.gov/documents/ LEITSC_Law_Enforcement_CAD_Systems.pdf (last visited Mar. 2, 2020).

(5)    TRIAL COUNSEL FAILED TO INVESTIGATE WHETHER A CONSTRUCTION ZONE FROM MILE POST 63 [TO] 55 ON THE GARDEN STATE PARKWAY EXISTED AT THE TIME OF THE INCIDENT.

(6)    THE PCR COURT ERRED WHEN IT FOUND TRIAL COUNSEL'S DECISION NOT TO CALL AN EXPERT WITNESS WAS REASONABLE TRIAL STRATEGY.

(7)    THE PCR COURT WAS WRONG WHEN IT FOUND TRIAL COUNSEL'S ERROR RELATED TO DEFENDANT'S <u>MIRANDA</u> STATEMENT WAS NOT PREJUDICIAL.

POINT II

AS THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

Because the PCR court did not hold an evidentiary hearing, we review both the factual inferences drawn by the PCR court from the record and the court's legal conclusions de novo. <u>State v. Blake</u>, 444 N.J. Super. 285, 294 (App. Div. 2016).  To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987), first by showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by

3                                                            A-0275-18T4

the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. Under those standards, we find no merit in defendant's arguments and affirm.

Defendant was convicted by jury of second-degree eluding, N.J.S.A. 2C:29-2(b). The State alleged, after a Stafford Township police sergeant stopped defendant's vehicle because it did not match the vehicle for which the license plates had been issued, defendant fled in his vehicle as the sergeant approached it on foot. The sergeant reentered his vehicle and pursued defendant's vehicle onto the Garden State Parkway for approximately eight miles. Defendant finally stopped his vehicle after he came upon two New Jersey State troop vehicles that were standing by with emergency lights activated to join the pursuit.

We affirmed his conviction, State v. Winton, No. A-4300-12 (July 14, 2015), where we fully set forth the facts of this case. We will not repeat them here unless germane to this appeal. The Supreme Court denied certification. State v. Winton, 223 N.J. 555 (2015).

A-0275-18T4

On direct appeal, defendant argued the State's failure to timely provide the CAD report violated the Rules relating to discovery and defendant's right to a fair trial. We ruled "[t]here was no due process violation because the CAD report was not withheld by the State"; "the trial court barred the report's admission until defendant consented"; and after defense counsel consented, he used the report to cross-examine the sergeant who pursued defendant from the entrance ramp to the Garden State Parkway at exit 63 to milepost 55.7. Winton, slip op. at 5. We also determined the trial court did not abuse its discretion in admitting the report because, notwithstanding the State's contention that the report had been provided in discovery, it gave defense counsel time to review the report, id. at 5-6.; and "defendant waived his claim of error by consenting to admission of the document," id. at 6. And we concluded defendant showed no prejudice "from the alleged late discovery" because he was aware of the sergeant's testimony and the State's timeline contentions without reference to the CAD report. Ibid. We added: "In any event, the document's admission into evidence did not produce an unjust result as the other evidence against defendant was overwhelming." Ibid.

The PCR judge determined our ruling barred defendant's present arguments that counsel was ineffective for failing to object to the admission of

the CAD report and contest the report's authenticity and accuracy under Rule 3:22-5. "Under Rule 3:22-5, prior adjudication of an issue, including a decision on direct appeal, will ordinarily bar a subsequent post-conviction hearing on the same basis." State v. Afanador, 151 N.J. 41, 51 (1997). An issue is only barred under the Rule, however, if the issue sought to be precluded "'is identical or substantially equivalent' to the issue already adjudicated on the merits." Ibid. (quoting State v. McQuaid, 147 N.J. 464, 484 (1997)).

Defendant's PCR arguments differ from those advanced on direct appeal. He now argues counsel was ineffective for failing to advise the trial court that the CAD report had been previously barred from evidence in a pretrial ruling by another judge. Defendant argues the report's admission bolstered the State's contention that defendant fled after being stopped by the sergeant, and prejudiced his defense premised on the inadmissibility of the CAD report: "alleging that there was never an initial motor vehicle stop[.]"

On direct appeal we held "the document's admission into evidence did not produce an unjust result since the other evidence against defendant was overwhelming." Winton, slip op. at 6. That determination also scotches defendant's argument in this case because defendant failed to show the admission of the document caused prejudice. Although the CAD report showed

the initial stop occurred two minutes before the sergeant began his pursuit, even if the initial stop did not occur, the sergeant's testimony established overwhelming proof of the elements of second-degree eluding.[2]

While defendant fled from the sergeant on the Parkway, he was paced by the sergeant at approximate speeds of 85, 90 and up to 125 miles per hour. The normal speed limit on the Parkway is sixty-five miles per hour, but a portion of the chase took place in a construction zone where the limit is forty-five miles per hour. The sergeant's testimony provided additional evidence establishing the "risk of death or injury" element. It was raining that evening and the roadway was wet. During the pursuit, defendant first passed cars on the right. He later approached vehicles in both lanes and cut across the Parkway from the left lane onto the right shoulder, passing what the sergeant described as "a clump of three or four cars" as he drove on the shoulder before crossing back to the left

---

[2] N.J.S.A. 2C:29-2(b) provides in pertinent part:

> Any person, while operating a motor vehicle on any street or highway . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle or vessel to a full stop commits a crime of the third[-]degree; except that, a person is guilty of a crime of the second[-]degree if the flight or attempt to elude creates a risk of death or injury to any person.

7

lane. He, again, cut across the Parkway from the left lane and passed a "clump of two or three cars" while driving on the shoulder before cutting across to the left lane.

We also note defense counsel consented to the admission of the report after the trial court gave him an opportunity to review it. Moreover, he used the report in an attempt to discredit the sergeant's testimony about the speeds reached during the pursuit. Specifically he elicited from the sergeant that during the approximate eight-mile pursuit, the sergeant claimed defendant travelled at 125 miles per hour for one and one-half miles and at eighty miles per hour for "most of the miles" covered during the chase, slowing only at the end for a mile or less, thereby suggesting that those claims were false because more than eight miles would have been travelled during the six- or seven-minute pursuit at those speeds.

We review defense counsel's actions under the familiar standards synopsized by the Court in State v. Arthur:

> In determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny . . . must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997). Because of the inherent difficulties in evaluating a defense counsel's tactical decisions from his or her perspective during trial, "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.

In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

[184 N.J. 307, 318-19 (2005) (alterations in original).]

According the presumption that counsel's conduct fell within the range of reasonable professional assistance, ibid., and adhering to the tenet that "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial," State v. Castagna, 187 N.J. 293, 314 (2006), we determine defendant has not established his counsel's performance was deficient. Nor, in light of the other overwhelming evidence presented by State, do we conclude there is a reasonable probability, but for counsel's averred error in consenting to the CAD report's admission, the result of the trial would have been different.

9

Defendant contends his counsel failed to challenge the authenticity and accuracy of the report by calling a subpoenaed witness, an identified dispatcher, "to testify whether: all [recorded] dispatches [during the pursuit] had been erased as alleged by the State"; the "times registered in the CAD report appeared inconsistent and improbable, thus[] raising the issue whether it was accurate"; the report "may have been assembled after the incident [and] was contrived to bolster [the sergeant's] version of events."

We first note defendant has not proffered an affidavit or certification from the dispatcher, contravening Rule 3:22-10(c); in order to warrant an evidentiary hearing, petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity the facts that he wished to present," State v. Jones, 219 N.J. 298, 312 (2014). Moreover, defendant has not proffered any evidence to support his contentions that the CAD report was flawed or contrived. A "defendant must allege specific facts and evidence supporting his allegations," State v. Porter, 216 N.J. 343, 355 (2013), and "do more than make bald assertions that he was denied the effective assistance of counsel," State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Likewise, defendant failed to submit an affidavit or certification from the booking officer he claims his counsel should have called to show he sustained a

black eye during his arrest. We agree with the PCR court that defendant's claim that his counsel erred by calling a property officer instead of the booking officer is nothing more than a bald assertion.

Defendant also avers his counsel failed to adequately cross-examine the sergeant regarding a use of force report; specifically, that he failed to ask the sergeant why the report was submitted five days after it was due. The record reveals the sergeant admitted to defense counsel during cross-examination that he waited five days before filing the report, and, despite the sergeant's denial that he hit defendant in the eye, the box on the report under the heading "Officer's use of force toward the subject [–] Hands/fists" was checked.

Under the standards announced in Arthur and Castagna, which we have already described, the record does not support that defense counsel's actions were deficient. Further, we agree with the PCR judge that even if counsel failed to establish the tardy submission of the report, defendant cannot meet the second prong of Strickland/Fritz. That alleged fact did not prejudice defendant, especially considering the evidence of his crime.

Defendant's argument that his counsel was ineffective for failing to investigate whether a construction zone actually existed on the Parkway is meritless. First, he proffers no evidence that a construction zone did not exist;

it is another bald assertion. The Star Ledger article defendant submitted is not competent evidence that the path of pursuit did not go through a construction zone. Further, even if a construction zone did not exist, and setting aside defendant's speed during the chase, the sergeant's testimony about defendant's driving—traversing lanes and driving on the shoulder while passing vehicles on a wet roadway outside the construction zone—was sufficient to establish the elements of second-degree eluding.

Defendant next argues the PCR court erred by finding his counsel's failure to call an expert witness to testify was a reasonable trial strategy. He contends the expert would have testified that his vehicle was incapable of reaching a speed of 125 miles per hour, and

> would have helped set forth an imperfect defense to second-degree eluding, by arguing [defendant's] speed was lower than testified to by [the sergeant] and therefore his conduct fell within the range of third-degree eluding, because there was no risk of death or injury to elevate his offense to the second-degree range.

Setting aside the PCR court's finding that the expert's two-page letter was a net opinion and would have been inadmissible at trial, even if the expert testified according to his report that defendant was travelling at fifty miles per hour, "[a]ssuming [his] speed was constant over [the] course" of five miles over six minutes; and that the highest speed, using a time interval of five minutes and

a distance of 5.7 miles, on average "could be as great as" sixty-eight miles per hour, the evidence of defendant's guilt was still overwhelming. Defendant's manner of driving—without regard to speed—met the statutory standard for second-degree eluding, particularly given the statutory "permissive inference that the flight or attempt to elude creates a risk of death or injury to any person if the person's conduct involves a violation of chapter 4 of Title 39[.]" N.J.S.A. 2C:29-2(b). Inasmuch as the trial court instructed the jury that they could base that inference on violations of traffic laws against improper passing and reckless driving, as well as speeding, defendant cannot show prejudice from counsel's alleged failure to call the expert.

Further, under the Arthur/Castagna standard, counsel was not deficient for choosing not to call the expert. The times and distances the expert utilized were contradicted by the record evidence. And, the expert's opinion:

> I understand [defendant's] vehicle was a 1999 Mercury Tracer. The standard configuration of that model is listed as equivalent to the Ford Escort containing a 1.9[-]liter engine and rated at [eighty-eight] horsepower. Based on my experience with such "compact" cars, I suggest that vehicle could not be driven on that roadway at the speed of 125 mph—although such speed may have been attained by [the sergeant,]

was clearly a net opinion.

A-0275-18T4

The net opinion rule bars "the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)). When an expert's opinion is "based merely on unfounded speculation and unquantified possibilities" it is inadmissible at trial. Id. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). The expert must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). The expert may not base their opinion solely on their own subjective standard. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) ("[I]f an expert cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion.").

We also agree with the PCR judge that the sergeant's brief mention of "Miranda"[3] during cross-examination was not prejudicial, a finding defendant argues was error. Defense counsel was questioning the sergeant about his denial that he attempted to talk to defendant at the police station:

> [DEFENSE COUNSEL]: Did you go back to the station that evening?

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[SERGEANT]: Yes, I did.

[DEFENSE COUNSEL]: Did you talk to him?

[SERGEANT]: To?

[DEFENSE COUNSEL]: To [defendant].

[SERGEANT]: No. I didn't have any more contact with [defendant].

[DEFENSE COUNSEL]: But you're the arresting officer; aren't you?

[SERGEANT]: That is correct.

[DEFENSE COUNSEL]: So weren't you – didn't you want to at least talk to him, interview him?

[SERGEANT]: No, I did not.

[DEFENSE COUNSEL]: Why not?

[SERGEANT]: Like I thought I answered earlier, it's a policy within the Police Department that anybody who is available comes in to assist with the processing.

[DEFENSE COUNSEL]: What you're saying is the arresting officer doesn't talk or try to talk to the individual that he arrested?

[SERGEANT]: I did not that particular night, no, I did not.

[DEFENSE COUNSEL]: Was somebody there at the station going to be talking to him?

15

[SERGEANT]:  That is correct.

[DEFENSE COUNSEL]:  But you didn't know who?

[SERGEANT]:  I know the officers that were there.

[DEFENSE COUNSEL]:  When you left him there, you just said, "Here, this is [defendant]"?

[SERGEANT]:  No. The officer – Officer Morrin arrived at the scene.  He knew exactly what was going on from the radio transmission.

[DEFENSE COUNSEL]:  But Officer Morrin isn't the arresting officer.  You were.

[SERGEANT]:  That's correct.

[DEFENSE COUNSEL]:  And you had no – you didn't want to talk to him about what happened?

[SERGEANT]:  No, I did not.

[DEFENSE COUNSEL]:  Get his reaction?

[SERGEANT]:  No, I did not.

[DEFENSE COUNSEL]:  Try to get an admission?

[SERGEANT]:  I don't know if we can talk about the Miranda.

Contrary to defendant's argument relying on inapposite cases involving a defendant's silent response to accusations, the evidence shows the sergeant never attempted to speak with defendant, not that defendant did not deny the charges

16

when questioned. The sergeant denied wanting even to speak to defendant. Moreover, defense counsel's questions did not prompt the single mention of "<u>Miranda</u>." That unanticipated response does not establish a claim of ineffective assistance of counsel under either prong of <u>Strickland/Fritz</u>.

We see no merit in defendant's argument that the PCR court's denial of an evidentiary hearing was error. Defendant did not present a prima facie case in support of his PCR application by demonstrating "the reasonable likelihood of succeeding" under the test set forth in <u>Strickland</u>, to warrant an evidentiary hearing. <u>State v. Preciose</u>, 129 N.J. 451, 463 (1992); <u>R.</u> 3:22-10(b). "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." <u>Cummings</u>, 321 N.J. Super. at 170. Defendant failed to meet that threshold. <u>See</u> <u>Preciose</u>, 129 N.J. at 463; <u>R.</u> 3:22-10(b). And he has certainly failed to show any prejudice from counsel's alleged ineffective assistance. Furthermore, an evidentiary hearing cannot be used to explore PCR claims. <u>See</u> <u>State v. Marshall</u>, 148 N.J. 89, 157-58 (1997). As such, an evidentiary hearing was properly denied.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0275-18T4