**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.     A-1974-18T3

ELDRIDGE HAWKINS, JR.,

      Petitioner,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent.

_____

Submitted March 30, 2020 – Decided April 22, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Board of Trustees of the Police and Fireman's Retirement System, Department of the Treasury, PRFS No. 3-10-47790.

Eldridge T. Hawkins, Sr., attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana C. DeAngelis, Deputy Attorney General, on the brief).

PER CURIAM

Eldridge Hawkins, II, appeals from a November 13, 2018 decision by the Board of Trustees (the Board) of the Police and Firemen's Retirement System (PFRS), concluding that Hawkins was ineligible for accidental disability retirement benefits because his disability was not the direct result of an October 2009 incident (the 2009 incident), but rather pre-existed it.[1] The Board issued a comprehensive eight-page written decision. We affirm.

Hawkins applied for accidental disability in December 2010. The Board determined that he was totally and permanently disabled, but denied his application, relying on medical documentation demonstrating that his disability was due to a pre-existing disease and not the direct result of the 2009 incident. The Board, however, granted Hawkins ordinary disability retirement benefits retroactive to March 2011. In reaching its final decision, the Board determined that the Administrative Law Judge (ALJ) applied the wrong burden of proof,

---

[1] Hawkins filed a related complaint against numerous parties, including Board members, alleging that Board members discriminated against him when they initially denied his application for accidental disability benefits. The Board transferred the matter to the Office of Administrative Law for a hearing. We affirmed an order dismissing that Law Division complaint, indicating that Hawkins could appeal the Board's final decision if it ruled against him. See Hawkins v. Hutter, No. A-1783-14 (App. Div. Oct. 7, 2016). The Board thereafter issued its final decision, which is the subject of this appeal.

and therefore the Board rejected the ALJ's conclusion that Hawkins was entitled to accidental disability benefits.

The Board concluded the ALJ's findings were not supported by the credible evidence. The Board noted that the ALJ's findings were based on the report of Dr. Stephan Kosmorsky, who—in the Board's view—did not discuss how Hawkins's injury was the direct result of the 2009 incident. And the Board determined that the ALJ ignored Hawkins's lack of treatment after the 2009 incident, specifically that Hawkins waited for almost a year and a half after the incident, and one year after seeing Dr. Lee, before getting treatment for his knee. According to the Board, Dr. Lakin, who concluded Hawkins's knee problems were not the direct result of the 2009 incident, offered the more reliable opinion as to causation.

The Board further concluded that the ALJ misapplied <u>Richardson v. Board of Trustees, Police & Firemen's Retirement System</u>, 192 N.J. 189 (2007), which the Board said requires the disabling incident to be the "essential significant or substantial contributing cause of the . . . disability." The ALJ, according to the Board, failed to explain how Hawkins hitting his knee on the dashboard caused a permanent injury. It is undisputed that Hawkins suffered a prior knee injury requiring reconstructive ACL surgery in 2006.

A-1974-18T3

On appeal, Hawkins argues:

POINT I

THE . . . BOARD, IN ITS REJECTION OF THE ALJ
TRIAL COURT DECISION DID NOT FOLLOW THE
LAW BY IMPROPERLY ASSERTING THAT THE
"ALJ APPLIED THE INCORRECT BURDEN OF
PROOF" AND SHOULD BE REVERSED.

POINT II

THE [ALJ] DECISION WHICH WAS FAVORABLE
TO [HAWKINS] RESTS ON THE ALJ CREDIBILITY
FINDINGS OF WITNESSES WHICH THE . . .
BOARD HAS IMPROPERLY DISTURBED IN
VIOLATION OF LAW WITH ITS NOVEMBER 13,
2018 DECISION AND SHOULD BE REVERSED AS
A MATTER OF LAW.

POINT III

THE [BOARD], THROUGH MISAPPLICATION OF
LAW, IMPROPERLY DENIED HAWKINS'
ACCIDENTAL DISABILITY RETIREMENT
BENEFITS PRIOR TO GETTING REVERSED BY
THE ALJ AND ITS SUBSEQUENT DENIAL WAS
ARBITRARY[,] CAPRICIOUS, UNSUPPORTED BY
THE RECORD AND SHOULD BE REVERSED.

POINT IV

HAWKINS'[S] TOTAL AND PERMANENT
DISABILITY IS THE DIRECT RESULT OF THE
[2009 INCIDENT] AND NOT THE RESULT OF A
PRE[-]EXISTING DISEASE AND ANY
SUGGESTION TO THE CONTRARY BY THE

4

BOARD BELIES THE FACTUAL FINDINGS OF THE ALJ AND IS PLAINLY UNREASONABLE.

POINT V

HAWKINS IS NOT REQUIRED TO PROVE THAT THE [2009 INCIDENT] WAS THE SOLE CAUSE OF HIS PERMANENT DISABILITY, ONLY THAT IT WAS THE SUBSTANTIAL CONTRIBUTING CAUSE OF HIS PERMANENT DISABILITY AND ANY LEGAL ARGUMENT OR DECISION BY THE BOARD TO THE CONTRARY IS WRONG AS A MATTER OF LAW AND SHOULD BE REVERSED.

POINT VI

ALL SUBSEQUENT WRITTEN MEDICAL OPINIONS ISSUED BY DR. JEFFERY LAKIN, THE STATE INDEPENDENT MEDICAL EXAMINER, BEYOND THE INITIAL REPORT ISSUED BY HIM ON MARCH 30, 2011 WERE GENERATED WITH NEFARIOUS INTENT, ARE NET OPINIONS, NOT LEGALLY SOUND, DEEMED NOT CREDIBLE BY THE ALJ AND SHOULD BE DISREGARDED LEAVING THE BOARD WITH A PLAINLY UNREASONABLE DECISION WHICH IS UNSUPPORTED BY THE RECORD.

POINT VII

[HAWKINS] NEVER HAD A DISEASE PRE[-]EXISTING OR OTHERWISE AND THUSLY DOES NOT FALL WITHIN THE RICHARDSON STANDARD EXCLUSION FOR PRE[-]EXISTING

DISEASES, THUS THE . . . BOARD SHOULD BE
REVERSED AS A MATTER OF LAW[.[2]]

"Our review of [an] administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Vorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"'[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs.'" Brady v. Bd. of

[2] Hawkins also submitted a reply brief, dated December 16, 2019, which raises largely the same arguments encompassed by his merits brief.

A-1974-18T3

<u>Review</u>, 152 N.J. 197, 210 (1997) (quoting <u>Charatan v. Bd. of Review</u>, 200 N.J. Super. 74, 79 (App. Div. 1985)).  "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record[,] findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained."  <u>Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys.</u>, 83 N.J. 174, 189 (1980).  That said, appellate courts review de novo an agency's interpretation of a statute or case law.  <u>Russo</u>, 206 N.J. at 27.

A PFRS member is entitled to accidental disability benefits under N.J.S.A. 43:16A-7(a)(1).  Under that provision, PFRS authorizes an award of accidental disability benefits to a member provided that:

> [T]he medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.
>
> [N.J.S.A. 43:16A-7(a)(1).]

In Richardson, the Court clarified the meaning of the term "traumatic event," and set forth a five-pronged standard mandating that a pension-system member seeking accidental disability benefits prove:

> 1. [T]hat he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; an[d]
>
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [192 N.J. at 212-13.]

The issue here is whether the Board's finding that Hawkins's injury/disability was not directly caused by the 2009 incident—but rather pre-existed it—is supported by the record.

A-1974-18T3

At the outset, this was a contested case submitted to the ALJ. In accordance with N.J.S.A. 52:14B-10(c), "[a]ll hearings of a State agency required to be conducted as a contested case under this act or any other law shall be conducted by an [ALJ]." The ALJ then files a report and a decision containing the recommended findings of fact and conclusions of law with the agency. Ibid. Upon reviewing the record, the agency may either "adopt, reject or modify the recommended report and decision." Ibid. Thus, the Board may modify or reject any findings of fact, conclusions of law, or interpretations of policy if the reasons for doing so are clearly stated. Ibid. If the Board modifies or rejects the ALJ's findings of fact, it must state the reasons for rejecting the findings and make new or modified findings that are supported by sufficient, competent, and credible evidence in the record. Ibid.

The Board adopted the ALJ's findings of fact with several modifications. The Board emphasized that the ALJ incorrectly placed the burden of proof on the Board rather than Hawkins. See Richardson, 192 N.J. at 212. The Board further noted the ALJ ignored key facts in his credibility findings. While it is true that an agency cannot reject or modify credibility findings of lay witness testimony, this does not apply to the expert testimony at issue here. N.J.S.A. 52:14B-10(c); see also ZRB, LLC v. N.J. Dep't of Envtl. Prot., 403 N.J. Super.

531, 561 (App. Div. 2008) (holding that lay testimony, but not expert testimony, is subject to the constraints of N.J.S.A. 52:14B-10(c)).

The ALJ " did not discuss how . . . Hawkins's 2009 injury [was] a direct result of the 2009 incident – [Hawkins] simply stated, where asked about direct result, that he is permanently disabled as a result of the incident." The Board also faulted the ALJ for failing to address the lack of a treatment record for Hawkins's knee for almost a year and a half after the 2009 incident. The Board also explained that it found Dr. Lakin's testimony more reliable because he explained the implications that the ACL reconstruction surgery had on Hawkins's knee and the direct implications that an accident such as the 2009 incident would have had on a person's knee.

Because the Board found that the ALJ did not address key facts and questions as to the direct result of the 2009 incident, it rejected the ALJ's conclusions of law. The ALJ failed to address basic questions, such as how Hawkins hitting his knee on the dashboard would have caused a permanent knee injury. The Board analyzed the facts under prior case law and explained how it arrived at its decision.

It is undisputed that the 2009 incident constitutes a traumatic event in accordance with the statute. But the Board denied Hawkins accidental benefits

because "there is no explanation of causation to establish that the 2009 incident directly resulted in . . . Hawkins's disability." Hawkins conceded that he had surgery on his knees after he was injured in a motorcycle accident in 2006.

The Board found that the ALJ merely accepted Dr. Lee's testimony without seeking further explanation. Dr. Lee opined that the 2009 incident directly caused Hawkins's disability, but he never explained how hitting one's knee on the dashboard could cause instability and laxity. Dr. Lee based his opinion on Hawkins's subjective complaints, but Hawkins did not complain about his knee pain until more than a year after the 2009 incident, despite seeking treatment for his neck, shoulder and back just one month after the incident. Hawkins sought treatment from Dr. Schob less than a month after the 2009 incident, and he did not complain about pain in his left knee at that time.

Hawkins's argument essentially places the burden of proof on the Board. He claims that "because the Board has not and cannot contradict [Hawkins's] assertions . . . , the Board's denial is not supported by the record, is arbitrary, capricious, plainly unreasonable and should be reversed." As the Board noted, and established in Richardson, the petitioner seeking benefits bears the burden of proof. See 192 N.J. at 212.

The Board found Dr. Lakin reliable because, unlike Dr. Lee, he explained the basis of ACL laxity and knee instability. He explained that these injuries are caused by "non-contact injury, twisting or turning. So a dashboard, you wouldn't expect it." He further stated that his review of medical records revealed that Hawkins endured contusions on his left knee as a result of the 2009 incident, but contusions do not cause instability or laxity of the knee and usually take "[a] period of days to a couple weeks" to heal. Dr. Lakin opined that Hawkins's ACL reconstruction surgery left him with "structural weaknesses after the surgery." Ultimately, Dr. Lakin concluded that Hawkins's disability was "not a direct result of [the 2009 incident]."

The Board's findings of fact and conclusions of law are clearly supported by the record. As noted, the Board was not required to accept the ALJ's findings of fact or conclusions of law. See N.J.S.A. 52:14B-10(c). The Board's decision to modify the ALJ's findings of law and its ultimate conclusions of law are adequately supported by the record. The Board found Dr. Lakin credible, as he more fully explained Hawkins's condition. In finding Dr. Lakin credible, in emphasizing the gaps in the ALJ's findings and conclusions, and in correctly placing the burden on Hawkins, the Board's findings and conclusions are supported by the record and are not arbitrary nor capricious.

Although Hawkins asserts that his permanent disability is a direct result of the 2009 incident, the Board correctly rejected the ALJ's findings of fact and conclusions of law.  See N.J.S.A. 52:14B-10(c).  The Board found Dr. Lakin more credible than Dr. Lee and used his opinions in arriving at its own conclusion of law.  In its decision, the Board explained why it found Dr. Lakin credible, and how it used his conclusions to arrive at its decision.  See ZRB, 403 N.J. Super. at 561.  Hawkins bore the burden of proof, and the Board could not rectify why Hawkins waited over a year before complaining about knee pain, how hitting his knee caused permanent disability, and how the 2009 incident was the direct cause of the permanent disability.  Thus, Hawkins has not sufficiently established that his permanent disability was the direct result of the 2009 incident.

We reject Hawkins's argument that he does not need to prove that his permanent disability is the direct result of the 2009 incident.  N.J.S.A. 43:16A-7 explicitly states that to qualify, a member must certify that he is "permanently and totally disabled as a direct result of a traumatic event occurring."  The Richardson Court reaffirmed "that the disability be a 'direct result of a traumatic event.'"  192 N.J. at 195 (quoting N.J.S.A. 43:16A-7); see also Gerba, 83 N.J. at 186 (analyzing and upholding the direct result requirement); Patterson v. Bd. of

Trs., State Police Ret. Sys., 194 N.J. 29, 42, 50 (2008) (quoting N.J.S.A. 43:16A-7(a)(1)) (imposing requirement that a member prove he or she is "'permanently and totally disabled as a direct result of a traumatic event'"); Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 428 (2018) (remanding on the issue of whether petitioner's disability directly resulted from the incident). Hawkins must satisfy this burden of proof to qualify.

Hawkins argues that Dr. Lakin's testimony and 2013 reports contain net opinions and were submitted with "nefarious intent." Under Rule 1:7-2, to properly preserve an issue for appeal, "a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor." If a party failed to raise an issue below, relief is not warranted unless that party demonstrates plain error by showing that the error was "clearly capable of producing an unjust result." R. 2:10-2; see also Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 502 (App. Div. 2017). Hawkins failed to object to both Dr. Lakin's testimony and the introduction of his reports at the administrative hearing. In fact, the ALJ asked Hawkins whether he objected to the admission of Dr. Lakin's 2013 reports, to which he replied, "I have no objection."

Nevertheless, Dr. Lakin's testimony does not constitute a net opinion. The net opinion rule "'forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)). A conclusion "'"based merely on unfounded speculation and unquantified possibilities"'" is inadmissible. Id. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). The expert must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). However, the expert may not base their opinion solely on their own subjective standard. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) (stating that "if an expert cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion").

The Board found Dr. Lakin's testimony more credible because he

> reliably explained how the knee is different structurally and mechanically after an ACL reconstruction, explained how there could be laxity in the knee shortly after the surgery, took into consideration that the records are inconsistent as to . . . Hawkins's knee problems, and explained that laxity and instability are caused by twisting or turning injuries, not by hitting a knee on a dashboard.

15

The Board relied on Dr. Lakin's testimony because he was able to adequately explain the lack of causal connection between the accident and Hawkins's injured knee. Cf. Buckelew v. Grossbard, 87 N.J. 512, 524 (1981) (finding an expert opinion to be a net opinion where there was a "failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom"). In fact, the Board explicitly rejected Dr. Lee's testimony and Dr. Kosmorsky's report because they failed to explain how Hawkins's injury could be the direct result of the 2009 incident.

To the extent that we have not addressed Hawkins's remaining contentions, we conclude that they are without merit to warrant attention in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16