**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0650-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

YOHER JIMENEZ, a/k/a
YOHER A. CUBILLOS,

     Defendant-Appellant.

_____

Submitted February 6, 2024 – Decided February 13, 2024

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-07-1355.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Yoher Jimenez appeals from a Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We incorporate herein the procedural history and facts set forth in our decision affirming defendant's conviction and sentence on direct appeal in State v. Jimenez, No. A-5560-16 (App. Div. Jun. 17, 2020), certif. denied, 244 N.J. 303 (2020). The following facts are pertinent to the present appeal.

The victim in this case was a thirteen-month-old baby girl. Id. at 3. Defendant was in a relationship with the baby's mother, who left the child in defendant's care on April 4, 2010. Defendant claimed at trial that he placed the child in a bathtub full of water while he retrieved some boxes from his car. Ibid. When he returned, he found the baby face down in the tub. Ibid. He removed her from the tub, dried and dressed her, and took her to the superintendent of the apartment building for help. Ibid. EMTs arrived and transported the baby to the hospital, where she remained on life support for four days before dying. Ibid. Defendant alleged that the child's death was accidental and that she "died from her submersion in the bathtub water." Ibid.

2

The State's trial evidence told a different story. The medical examiner performed an autopsy that revealed the child had fifteen rib fractures, two of which were fresh. Ibid. The medical examiner brought in an expert neuropathologist to review the case after the medical examiners discovered that the child's brain was swollen and that "[t]here was an odd cluster of blood vessels on the top surface of [her] skull[.]" Id. at 3-4.

The neuropathologist found that the child's brain swelling "indicat[ed] a deprivation of oxygen or blood supply." Id. at 4. The expert found signs of prior brain trauma, which was not related to the child's death. Id. at 4-5. When he examined the child's spinal cord, the expert found that it had been crushed. Id. at 5-6. Once that crush injury occurred, the baby was no longer able to breathe. Id. at 6. Thus, the baby's "submersion in water had no relevance whatsoever to [the child's] death once the crush injury to the spinal cord occurred[.]" Ibid.

The neuropathologist opined that

> the spinal cord injury was unquestionably the actual cause of death. He deduced a powerful force must have been inflicted such that [the child's] head was suddenly moved ('hyper-flexed') far backward or far forward in a way that caused the bones of her spine to move against one another. Such a high cervical spinal cord injury is almost always fatal.

A-0650-22

[Id. at 6-7.]

The medical examiner "issued a death certificate listing the cause of death as acute cervical spinal cord injury and the manner of death as homicide." Id. at 7.

In a statement to police, defendant claimed that he was "playing" with the child in the bathtub. He admitted he held the baby by her feet and repeatedly forced her head under the water. The child then hit her head on either the faucet or the tub bottom. Defendant demonstrated his actions using a doll the police provided him. After "playing" with the infant in this fashion, defendant stated the baby looked like "she was about to go to sleep."

Defendant claimed he took the child to the bedroom, and he demonstrated for the police how he threw her body onto the mattress. He drove the heel of his hand "real hard" into the child's stomach. Defendant told the police that when the child turned purple, he went for help.

During the interview, defendant admitted that he had previously hit the child. He also gave

> varying accounts of how [the child] came to be critically unresponsive while in his sole care to: the building superintendent, the EMTs and police who responded to a 911 call, a detective at the hospital at which [the child] was treated, detectives during defendant's statement taken at the Prosecutor's Office, [the child's] mother, and at trial.

4

[Id. at 30.]

On direct appeal, defendant raised the same ineffective assistance of counsel argument that he presents in the matter at hand. He asserted his trial attorney was ineffective because he did not "subpoena Dr. Zhongxue Hua, a forensic pathologist, whose trial testimony would have buttressed defendant's defense that [the child] drowned while he left her alone in the bathtub, countering the State's evidence as to her cause of death." Id. at 7-8. Finding that this issue would be better addressed through a petition for PCR, we declined to consider defendant's ineffectiveness of counsel argument in our decision on direct appeal. Id. at 15.

However, we set forth the facts underlying defendant's claim of ineffective assistance of counsel in our opinion. Id. at 8-15. The parties are fully familiar with these facts and, therefore, we need only briefly summarize them here.

Defendant's prior attorney retained Hua sometime in 2013. Id. at 8. However, in 2016, the attorney advised the court that he had decided not to use Hua as an expert. Id. at 9. A few months later, defendant hired a new attorney for the trial.

A-0650-22

Just before the trial began in January 2017, defendant's trial attorney listed Hua on his witness list. Ibid. However, the attorney did not provide Hua's report to the State until jury selection had begun. Id. at 10. Hua supplied a

summary report, which the trial court later characterized as a net opinion[.] [The summary report] synopsized the doctor's review:

1. [The baby's] cause of death was due to her drowning on April 4, 2010.

2. Her eventual brain death with global brain and spinal hypoxic ischemia changes on [April 8, 2010] was due to her prolonged cardiopulmonary arrest on [April 4, 2010].

3. The autopsy described discoloration of outer table of left parietal skull was due to her medical treatment and/or resuscitation.

4. [The baby's] rib fractures and healed subdural membrane were not related to . . . her cardiopulmonary . . . arrest on [April 4, 2010] and her subsequent death.

5. [The baby] had no evidence of fatal trauma on her head and neck on [April 4, 2010].

[Id. at 10-11.]

However, defendant's trial counsel never called Hua as a witness at the trial. The attorney advised that there was a dispute between Hua and the Office of the Public Defender over the doctor's fee. Id. at 12. In addition, the attorney

6

stated that Hua had scheduling issues which prevented him from testifying. Id. at 12-13. And, as already mentioned, the trial court determined that Hua's report was an inadmissible net opinion. Id. at 10.

The jury convicted defendant of first-degree murder, second-degree endangering the welfare of a child, and third-degree hindering apprehension or prosecution. Id. at 1. The trial court sentenced defendant to an aggregate term of life in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Ibid. We affirmed defendant's convictions and sentence on direct appeal. Id. at 2.

## II.

Defendant filed a timely petition for PCR. Among other things, defendant again argued that his trial attorney was ineffective because he failed to call Hua as a witness at trial. Defendant argued that his attorney's failure to subpoena Hua prevented him from presenting a complete defense.

Following oral argument, the PCR judge rendered a thorough written decision, concluding that defendant did not satisfy the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a showing that trial counsel's performance was deficient and that, but for the deficient performance, the result would have been different.

A-0650-22

The PCR judge identified the issue to be decided as "whether Dr. Hua's testimony was such that, in its absence, defendant was unable to present a defense and the jury received only a partial presentation of facts." In answering this question in the negative, the PCR judge agreed with the trial court that Hua's summary report was "an inadmissible net opinion." Therefore, the judge found that the trial court would not have permitted Hua to testify even if defendant's trial attorney had subpoenaed him to do so.[1]

---

[1] This ruling was clearly correct. Expert opinions must "be grounded in 'facts or data derived from[:] (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v. Cty. of Essex (Polzo I), 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo I, 196 N.J. at 583).

Therefore, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, L.L.C., 216 N.J. 115, 144 (2013)). The net opinion rule directs that experts "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). In short, the net opinion rule is "a prohibition against speculative testimony." Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

A-0650-22

Just as importantly, the PCR judge found that even if Hua's net opinion had been permitted in evidence, it would not have changed the result of the trial. This is so because Hua's summary conclusions did not contradict the conclusions of the State's experts.

For example, Hua opined that the baby's death was due to drowning. However, Hua did not respond or address the State's neuropathologist's finding that the crushed spinal cord was the actual cause of death. The PCR judge stated, "More strikingly, however, a finding that [the baby] died of drowning (rather than a crush injury) does little to rebut the State's case-in-chief that the defendant brutally beat and murdered" the baby. The judge further explained:

> Whether [the child] died of drowning or injury to her spinal cord has little bearing on this underlying argument. While defendant may have tried to utilize this alternate cause of death as a means to establish [the baby's] accidental death (contrary to murder), this court cannot readily find that such a defense would have been successful before the jury, which was presented with (1) defendant's confession to violently beating [the infant] in the bathtub, even after she went limp, (2) evidence of [the baby's] freshly broken limbs and crush injury to her spinal cord, (3) evidence of [the baby's] injuries indicating abuse, (4) defendant's admission of

---

Hua's summary report failed to satisfy the requirements for admission. He did not explain "the factual bases for [his] conclusions, explain [his] methodology, [or] demonstrate that both the factual bases and the methodology are reliable." Townsend, 221 N.J. at 55.

inflicting prior harm to [the child], (5) defendant's inconsistent explanation of the events surrounding [the infant's] death, and (6) defendant's attempt to cover-up his actions by drying and dressing [the child] before seeking aid.[2]

The PCR judge also rejected defendant's argument that his trial attorney was ineffective because he did not call another expert as a witness when Hua was unavailable. The judge noted that even now, "defendant has failed to establish that there was or is an expert who would refute the opinion of the State's expert[.]" Absent such evidence, defendant was not able to establish the second prong of the Strickland test. The judge stated:

> [T]his court declines to find that [defense counsel] was ineffective for failing to secure Dr. Hua's appearance and testimony. [Defense counsel] acted reasonably in determining, as previous counsel had, not to call Dr. Hua. And, even if [defense counsel] had acted unreasonably, defendant's case was not prejudiced, and the outcome was not affected, by Dr. Hua's failure to appear.

III.

On appeal, defendant presents the following contentions:

POINT ONE

---

2  The PCR judge also explained how none of Hua's four other summary conclusions contradicted those provided by the State's expert neuropathologist and by the medical examiner.

A-0650-22

TRIAL COUNSEL'S FAILURE TO RETAIN AND PRODUCE FORENSIC PATHOLOGIST, DR. ZHONGXUE HUA, AS A DEFENSE WITNESS AT TRIAL DENIED THE DEFENDANT HIS RIGHT TO PRESENT A COMPLETE DEFENSE, AND CONSTITUTED A PRIMA FACIE CLAIM FOR [PCR].

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS AND PETITIONS FOR [PCR].

B. TRIAL COUNSEL'S NEGLECT TO ENSURE THE PRESENCE OF DR. HUA AT TRIAL, AND HIS MISREPRESENTATIONS ABOUT DR. HUA'S AVAILABILITY AS DEFENDANT'S FORENSIC PATHOLOGY EXPERT AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL.

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing and the defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321

11

N.J. Super. 154, 170 (App. Div. 1999).  Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing.  R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).  We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion.  Preciose, 129 N.J. at 462.

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial.  Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987).  There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding.  United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

Where, as here, the defendant asserts that his attorney failed to call a witness who would have exculpated him, he must assert the facts that would

have been revealed, "supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Petrozelli, 351 N.J. Super. 14, 23 (App. Div. 2002) (quoting Cummings, 321 N.J. Super. at 170). When a defendant claims that trial counsel inadequately investigated his case, he must also supply certifications supporting his claim. State v. Porter, 216 N.J. 343, 354 (2013). In addition, deciding which witnesses to call to the stand is "an art," and we must be "highly deferential" to such choices. State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 689).

Having considered defendant's contentions in light of the record and the applicable law, we affirm the denial of defendant's PCR petition substantially for the reasons detailed at length in the PCR judge's lengthy written opinion. We discern no abuse of discretion in the judge's consideration of the issues, or in his decision to deny the petition without an evidentiary hearing. We are satisfied that the trial attorney's performance was not deficient, and defendant provided nothing more than bald assertions to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13