960 A.2d 375

DONALD T. POLZO, AS EXECUTOR FOR THE ESTATE OF MATHI KAHN–POLZO, AND DONALD T. POLZO, INDIVIDUALLY, PLAINTIFF–RESPONDENT, v. COUNTY OF ESSEX, DEFENDANT–APPELLANT, AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY, JOHN/JANE DOE 1–10 AND JOHN DOE CORP. 2–10, DEFENDANTS.

Argued September 9, 2008—Decided December 3, 2008.

*Meredith Kaplan Stoma,* argued the cause for appellant (*Morgan Melhuish Abrutyn* and *Harry J. Del Plato,* Essex County Counsel, attorneys; *Ms. Stoma* and *Alan Ruddy,* of counsel; *Mr. Ruddy* and *Jeffrey S. Leonard,* on the brief).

*E. Drew Britcher,* argued the cause for respondent (*Britcher, Leone & Roth,* attorneys; *Jessica E. Choper,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal requires that we revisit the intersection of the provisions of the Tort Claims Act, *N.J.S.A.* 59:4–1 to 14–4, that govern claims against governmental entities arising from an alleged dangerous condition on public property. Specifically, *N.J.S.A.* 59:4–2(b) provides in part that a public entity will not be liable for injuries arising from a dangerous condition on public property unless the "public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." *N.J.S.A.* 59:4–3(b) constructively imputes notice of the dangerous condition of public property to a public entity "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." Finally, *N.J.S.A.* 59:4–2 provides that, even if it is shown that a dangerous condition existed on public property and the public entity was on notice of it, either actually or constructively, the public entity nevertheless will be immune from liability "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable."

On summary judgment, the motion court skirted the question of whether the public entity was on actual or constructive notice of the dangerous condition alleged and, assuming that it was, concluded that inaction in the face of that knowledge was not palpably unreasonable. As a result, the motion court entered summary judgment in favor of the public entity. The Appellate Division reversed and reinstated the complaint. Relying almost exclusively on an expert's report, the panel concluded that a depression in the shoulder of a roadway—the claimed cause of the accident sued on—" 'existed for such a period of time and was of such an obvious

nature' that it should have been discovered by the [public entity]." It further determined that the issue on which the motion court entered judgment in favor of the public entity—whether the public entity acted or failed to act in a "palpably unreasonable" manner—was preserved for trial.

We address only the sufficiency of the plaintiff's proofs in respect of the question of whether constructive notice of a dangerous condition on public property can be imputed to the public entity. For the reasons that follow and because the record on appeal is insufficient to satisfy plaintiff's burden, we conclude that, due to the procedural circumstances presented, it cannot be determined whether, as a matter of law, the public entity was on constructive notice of a dangerous condition on public property. We therefore reverse the judgment of the Appellate Division and remand the cause to the Law Division for further proceedings.

## I.

On Saturday, August 18, 2001, Mathi Kahn–Polzo together with four other riders engaged in a group bicycle ride through Essex County. At approximately 12:23 p.m., the group was headed in a westerly direction on Parsonage Hill Road in Millburn; they were riding on the shoulder of the road and Kahn–Polzo was trailing the group. The lead rider of that group, Gus Schlaier, heard Polzo exclaim "Oh, my God," followed by his name—"Gus"—and then a crash. Schlaier immediately stopped and turned. He saw Kahn–Polzo lying face down in the shoulder of the roadway. Schlaier called for his fellow riders to stop, and help was called. Kahn–Polzo was unconscious and was rushed to the hospital. She died twenty-six days later.

Plaintiff Donald T. Polzo, Kahn–Polzo's widower, filed suit as executor of his wife's estate as well as on his own behalf.[1] That suit charged that the Township of Millburn, the County of Essex,

---

[1] Donald T. Polzo, individually, asserted a separate loss of consortium claim, which is not relevant here.

the State of New Jersey, and assorted fictitious individuals and entities were negligent, asserting that a depression or declivity in the shoulder of the roadway constituted a dangerous condition giving rise to liability and that Kahn–Polzo's accident was the direct and proximate result of her bicycle striking that depression or declivity. Specifically, plaintiff claimed that the defendants, jointly and severally, owed a duty of care "in making the road reasonably safe for persons riding bicycles on and around said road[;]" that the defendants knew or should have known that the road was "in a dangerous, hazardous and unsafe condition[,]" and that the claimed dangerous conditions caused Kahn–Polzo "painful and permanent injuries which ultimately resulted in her death[.]" Because, at the location of this accident, Parsonage Hill Road is a county road, the claims against both the Township of Millburn and the State of New Jersey were dismissed with prejudice, leaving only the County as an identified public entity defendant.

Once the discovery period concluded, the County moved for summary judgment. It asserted that (1) the County had no actual or constructive notice of the claimed dangerous condition; (2) the County's actions or inactions in addressing the depression or declivity on the shoulder of the road were not palpably unreasonable; (3) the depression or declivity in the shoulder did not create a substantial risk of harm to foreseeable users; and (4) plaintiff had not established that decedent's injuries and death were proximately related to the depression or declivity in the shoulder of the roadway. After briefing and argument, that motion was granted.

Summarizing the case succinctly, the motion court explained that "this is a case clearly in which [plaintiff is] alleging that the County of Essex allowed a dangerous condition that [it] had constructive notice of to exist for a sufficiently long amount of time and did nothing about it." It noted that, based on those allegations, plaintiff asserted that, "therefore, it was palpably unreasonable for [the County] not to [address that condition]." The motion court explained that the shoulder of the roadway was four feet wide, that the width of "the declivity, the depression, sink

hole, whatever you want to call it was approximately two-feet either way[,]" and that the depression or declivity was "anywhere from an inch and a half to two-inches [deep.]" It observed that the public entity had

> a policy of repairing, and not re-paving, but repairing if they have notice as to the existence of such a depression [—] either by way of a citizen's complaint, the police complaining, or by way of any accident or injury occurring that's alleged to be as a result of that depression [—] that they would repair it within a short time after that.

Consistent with that policy, the motion court recounted that there were "a number of complaints or notices that there were potholes along this stretch of Parsonage [Hill] Road, approximately 2.6 miles[ a]nd a record that they did go out and repair it shortly after receiving notice."

Based on those factual findings and assuming, without deciding, that the depression or declivity was a dangerous condition that was the proximate cause of Kahn–Polzo's accident, the motion court elided the question of whether the public entity was on actual or constructive notice of the assumed dangerous condition and, instead, couched the issue on summary judgment as whether the County's "action or inaction[ ] in protecting against [the defined dangerous] condition is palpably unreasonable." It defined the "palpably unreasonable" standard as, "under any given circumstances[,] it must be manifest and obvious that no prudent person would approve [the public entity's] course of action or inaction." Concluding that nothing presented justified a finding of governmental behavior that, as a matter of law, was palpably unreasonable, the motion court dismissed plaintiff's complaint.

Plaintiff appealed, and the Appellate Division reversed. In an unpublished, per curiam opinion, the panel relied in large measure on "an engineering report prepared by Dr. Ira S. Kuperstein." According to the Appellate Division,

> Dr. Kuperstein concluded "with a reasonable degree of engineering certainty, that the bicycle entered the depression, and as a result thereof, its rider fell and was injured." According to Dr. Kuperstein, the subject depression existed for a significant period of time, which he described as "months if not years, based on the recorded changes." In addition, Dr. Kuperstein concluded the depression would

have, or should have, "been noticed by those responsible for the maintenance of Parsonage Hill Road for what it was—a maintenance defect, and/or dangerous or hazardous condition, that could foreseeably cause, (and, unfortunately did cause) an accident of the subject type."

The panel explained that, "[b]ased on the size and location of the depression, and Dr. Kuperstein's report, plaintiff argued a dangerous condition had existed for such a period of time that the County had constructive notice of the condition prior to the accident on August 18, 2001." It further noted that

[p]laintiff also offered proof there were a large number of complaints concerning potholes on Parsonage Hill Road prior to decedent's accident, and defendant's road maintenance records confirmed that on July 12, 2001, T. Burton, an employee of the Essex County Department of Public Works, reported he checked and filled potholes along the entire length of Parsonage Hill Road. In addition, plaintiff provided the court with the deposition testimony of Salvatore Macaluso, the Assistant County Supervisor of Roads, who acknowledged, after viewing a photograph of the depression in question, if "we had knowledge of this and it was called in by the police or anybody else, it probably would have been [repaired]."

Reasoning that "[w]hether the conduct of a public entity was palpably unreasonable is ordinarily for the jury to decide[,]" and concluding that "in [its] view, a jury must decide whether defendant was palpably unreasonable in this case[,]" the Appellate Division ruled that

[w]hen viewed most favorably for plaintiff, the evidence establishes the depression in the roadway "existed for such a period of time and was of such an obvious nature" that it should have been discovered by the County. *N.J.S.A.* 59:4–3(b). Furthermore, plaintiff's proofs were sufficient to raise a question of fact as to whether the County was palpably unreasonable for failing to repair the depression when it allegedly checked for potholes and repaired them along the entire length of Parsonage Hill Road on July 12, 2001—approximately five weeks prior to decedent's tragic accident.

We granted the County's petition for certification. 193 *N.J.* 221, 936 *A.2d* 968 (2007).

## II.

The County argues that the Appellate Division erred in two respects. First, the County urges that the panel, contrary to prior precedent, misapplied the constructive notice provision of the Tort Claims Act. *N.J.S.A.* 59:4–3(b). Second, the County argues

that the Appellate Division also erred when it concluded that it was solely for the jury to determine whether the County's actions or inactions in respect of the depression/declivity in the shoulder of the roadway were "palpably unreasonable" under *N.J.S.A.* 59:4–2.

Identifying the same issues as the County, plaintiff reaches a diametrically opposite result. In plaintiff's view, the panel properly concluded that the County was on constructive notice of the depression or declivity that is claimed to have caused Kahn–Polzo's accident. Furthermore, plaintiff posits that, in the circumstances presented and in light of the County's constructive notice of this dangerous condition, whether the County's inaction was "palpably unreasonable" is quintessentially for a jury to determine.

## III.

Any application of the Tort Claims Act must start from its "guiding principle," that is, "that 'immunity from tort liability is the general rule and liability is the exception.'" *Coyne v. State Dep't of Transp.*, 182 *N.J.* 481, 488, 867 *A.*2d 1159 (2005) (quoting *Garrison v. Twp. of Middletown*, 154 *N.J.* 282, 286, 712 *A.*2d 1101 (1998)). For that reason, *N.J.S.A.* 59:4–2 establishes several elements that must coalesce before a public entity will be held liable. It provides, in full, as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[*N.J.S.A.* 59:4–2.]

Stated in a narrative, the relevant elements of a claim against a public entity in New Jersey arising from the condition of property are that

> in order to impose liability on a public entity pursuant to that section, a plaintiff must establish the existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."
>
> [*Vincitore v. N.J. Sports & Exposition Auth.*, 169 *N.J.* 119, 125, 777 *A.*2d 9 (2001).]

*See also* Harry A. Margolis and Robert Novack, *Claims Against Public Entities*, comment to *N.J.S.A.* 59:4–2 at 115–16 (Gann 2008) (same; citing cases).

This case focuses on the last two of those elements: whether the County had constructive notice of the depression/declivity that is claimed to be a "dangerous condition," and whether, assuming the existence of a dangerous condition, the County's inaction in repairing it was "palpably unreasonable."[2] It is to the first of those

---

[2] Because the result we reach requires a remand on the question of constructive notice, we need not reach the question of whether the public entity acted or failed to act in a "palpably unreasonable" manner. *See generally Coyne, supra,* 182 *N.J.* at 493, 867 *A.*2d 1159 § explaining that (1) " 'palpably unreasonable' means more than ordinary negligence, and imposes a steep burden on a plaintiff"; (2) "[t]he term 'palpably unreasonable' implies behavior that is patently unacceptable under any given circumstances and it must be manifest and obvious that no prudent person would approve of its course of action or inaction[;]' " (3) "even if a plaintiff were to establish the prerequisites for negligence liability on a public entity, he could not prevail if the action the public entity took or failed to take was not palpably unreasonable[;]" (4) "[t]his element, the action or inaction of the public entity, refers to the public entity's discretion in determining what action should or should not have been taken[;]" and (5) "plaintiff bears the burden of proving that defendant acted in a palpably unreasonable manner" (internal citations, quotation marks and editing marks omitted).

To the extent the Appellate Division grounded its analysis concerning whether the County's actions or inactions were "palpably unreasonable" on its finding that the County had constructive notice of a dangerous condition, our conclusion removes the basis for that finding. Hence, that portion of the Appellate Divi-

issues—whether plaintiff has satisfied his burden of proving that the County was on constructive notice of a dangerous condition— that we now turn.

## A.

In certain material respects, the proofs in this case were crystal clear: although the County in fact had examined and repaired potholes and depressions/declivities along the roadway of Parsonage Hill Road, it had not identified or repaired this specific depression/declivity in the shoulder of that roadway. Based on the proofs tendered, plaintiff further contends that the County "knew or, in the exercise of reasonable care[,] should have known[ ] of the existence of [the dangerous condition] and failed to correct or otherwise cure [it.]" The Appellate Division concluded that the proofs presented by plaintiff on whether the County was on constructive notice of this dangerous condition were sufficient to defeat the County's summary judgment motion. Given the state of the record before us, we are compelled to disagree.

No doubt, the proofs demonstrated that the County indeed had repaired potholes along Parsonage Hill Road. Yet, those same proofs fall short of demonstrating whether those repairs were made in the roadway itself or on the shoulder of the roadway. *See* *N.J.S.A.* 39:1–1 (specifically excluding the shoulder from the definition of a "roadway"). Likewise, the deposition testimony of the County's assistant supervisor of roads to the effect that the County would have repaired the depression/declivity identified by plaintiff if it had been made known to the County is irrelevant to the question of whether the County had constructive notice of that dangerous condition. That testimony addressed what the County would have done if it had actual notice of the depression/declivity,[3]

_____

sion's decision that discusses whether the County's actions or inactions were "palpably unreasonable" is vacated.

[3] Indeed, consistent with that testimony, the County repaired the depression/declivity in this case shortly after the accident, once it was on notice of its existence.

and not whether the County should have known of—that is, had constructive notice of—the condition of the shoulder at that location.

■ Those conclusions are compelled for the following reasons. The logical point of departure is the unremarkable proposition that the mere "[e]xistence of an alleged dangerous condition is not constructive notice of it." *Sims v. City of Newark,* 244 *N.J.Super.* 32, 42, 581 *A.*2d 524 (Law Div.1990). Guidance is also provided by the parallel propositions that while "[c]omplaints ... about a dangerous condition may serve to establish actual or constructive notice to [a public entity] of *that condition*[,]" complaints concerning one geographical location "cannot serve as notice of a [dangerous condition] at a *different location." Norris v. Borough of Leonia,* 160 *N.J.* 427, 447–48, 734 *A.*2d 762 (1999) (emphasis in original).

### B.

■ In the absence of actual notice, a public entity will be liable for a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." *N.J.S.A.* 59:4–3(b). Measured against that yardstick, the only evidence presented by plaintiff that the alleged dangerous condition qualified for constructive notice is the report of plaintiff's engineering expert. Standing alone, that report is insufficient to sustain plaintiff's burden.

On the issue of notice, Dr. Kuperstein, plaintiff's engineering expert, opined that

> since [the depression/declivity] would have existed for a significant period of time [—] i.e. months if not years, based on the recorded changes [—] it would, or should, have been noticed by those responsible for the maintenance of Parsonage Hill Road for what it was—a maintenance defect, and/or dangerous or hazardous condition,

that could foreseeably cause (and, unfortunately did cause) an accident of the subject type.[4]

On the last page of his report, Dr. Kuperstein states:

> I have concluded, and it is my opinion, with a reasonable degree of engineering certainty, that: a dangerous condition of the roadway existed at the subject location; this defect could or should have been noticed for a significant period of time; and, the subject dangerous condition was a direct or proximate cause of the accident that occurred and unfortunate injuries sustained within it.

■ It has been repeatedly stressed that expert testimony must meet "three basic requirements" for admissibility: " '(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.' " *State v. Townsend,* 186 *N.J.* 473, 491, 897 *A.*2d 316 (2006) (quoting *State v. Torres,* 183 *N.J.* 554, 567–68, 874 *A.*2d 1084 (2005)); *see also DeHanes v. Rothman,* 158 *N.J.* 90, 100, 727 *A.*2d 8 (1999) (same) (quoting *State v. Kelly,* 97 *N.J.* 178, 208, 478 *A.*2d 364 (1984)). *See, generally, N.J.R.E.* 702 (providing that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise").

■ That said, the rules governing expert opinion testimony do not allow the wholesale admission of every expert's opinion, even those of qualified experts opining in an area appropriate for expert opinion. Recently, we explained that while *"Rule* 702 permits a qualified expert witness to testify 'in the form of an opinion or otherwise,' " *N.J.R.E.* 703 "addresses the *'bases of opinion testimony by experts.'* " *Townsend, supra,* 186 *N.J.* at 494, 897 *A.*2d 316 (emphasis supplied); *see N.J.R.E.* 703 (providing that "[t]he

---

4 The phrase "i.e., month if not years, based on the recorded changes" appears in a footnote in the original; for clarity and continuity, that phrase has been inserted in the text where originally footnoted.

facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing[; and i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence"). In that context,

> Rule 703 is intended to permit expert opinion based on "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject."
>
> [*Townsend, supra,* 186 *N.J.* at 494, 897 *A.2d* 316 (quoting Richard Biunno, *New Jersey Rules of Evidence* 896 (2005)).]

■ "The corollary of [*Rule* 703] is the net opinion rule, which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." *Ibid.* (citing *Creanga v. Jardal,* 185 *N.J.* 345, 360–62, 886 *A.2d* 633 (2005); *State v. Papasavvas,* 163 *N.J.* 565, 607, 751 *A.2d* 40 (2000)). *Townsend* states the operative rule: "Simply put, the net opinion rule 'requires an expert to give the why and wherefore of his or her opinion, rather than a mere conclusion.'" *Ibid.* (quoting *Rosenberg v. Tavorath,* 352 *N.J.Super.* 385, 401, 800 *A.2d* 216 (App.Div.2002)).

On its face, Dr. Kuperstein's report appears to provide no explanation for any of his conclusions: it does not explain the basis for his conclusion that the depression/declivity "would have existed for a significant period of time[;]" it does not support, in any manner whatsoever, the statement that the depression/declivity existed for "months if not years[;]" and it does not cite to or otherwise explain the relied-upon "recorded changes[.]" In sum, Dr. Kuperstein's opinion concerning whether the County was on constructive notice of the depression/declivity may suffer from the very ills that condemn a net opinion: it can be said to present solely a bald conclusion, without specifying the factual bases or the

logical or scientific rationale that must undergird that opinion.[5] If so, then the result is as simple as it is compelling: a net opinion alone is insufficient to sustain plaintiff's burden of establishing that the public entity was on constructive notice of a dangerous condition. *See Norris, supra,* 160 *N.J.* at 446, 734 *A.2d* 762 (holding that "before a plaintiff may prevail against a public entity on the ground that it failed to protect against a dangerous condition of public property, the *plaintiff must prove* that ... '[the] public entity had actual or constructive notice of the dangerous condition ... a sufficient time prior to the injury to have taken measures to protect against the dangerous condition'" (quoting *N.J.S.A.* 59:4–2(b); emphasis supplied)); *N.J.S.A.* 59:4–3(b) (providing for constructive notice "only if the plaintiff establishes" statutory prerequisites).

## C.

 In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: "(1) [a] duty of care, (2)[a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]" *Weinberg v. Dinger,* 106 *N.J.* 469, 484, 524 *A.2d* 366 (1987) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts,* § 30 at 164–65 (5th ed. 1984)). When a negligence claim asserts that "a public entity is liable for injury caused by a condition of the property[,]" the Tort Claims Act requires, however, that

> the plaintiff establish[ ] that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that ... [the] public entity had actual or constructive notice of the dangerous condition ... a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> [*N.J.S.A.* 59:4–2.]

---

[5] Although the County did not move to strike Dr. Kuperstein's expert report as a net opinion and, hence, its admissibility was not challenged in the context of the summary judgment motion, the fact that Dr. Kuperstein's report is a net opinion defines the weight it is to be afforded.

The Tort Claims Act further explains that a public entity shall be deemed to have constructive notice of a dangerous condition of property "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." *N.J.S.A.* 59:4-3(b). Finally, the Tort Claims Act makes clear that, even if the public entity's property constituted a "dangerous condition;" even if that dangerous condition proximately caused the injury alleged; even if it was reasonably foreseeable that the dangerous condition could cause the kind of injury claimed to have been suffered; and even if the public entity was on notice of that dangerous condition; no liability will be imposed "upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." *N.J.S.A.* 59:4-2.

Those requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail. Although plaintiff's failure to satisfy the Tort Claims Act requirements was presented below, the motion court vaulted over the constructive notice requirement and squarely addressed instead only the last of these requirements: whether the County's actions or inaction were "palpably unreasonable." The Appellate Division correctly addressed first the precedent issue of whether the County was on constructive notice of a dangerous condition of property, and it determined that question based on Dr. Kuperstein's opinion, a point neither party advanced.[6]

---

[6] Significantly, other than simply reciting the contents of Dr. Kuperstein's report in a statement of facts, neither plaintiff's Appellate Division initial brief nor his reply brief substantively addressed that report or suggested in the slightest way that it sufficed, either in whole or in part, to satisfy plaintiff's burden to prove that the County had constructive notice of any dangerous condition. The County's answering brief similarly does not address the question.

Dr. Kuperstein's opinion, standing alone, may well be insufficient to satisfy plaintiff's burden of proof on the constructive notice issue. If it is insufficient, in this record on appeal "there was no evidence of how long the [dangerous condition existed and, hence,] plaintiff could not even meet the fundamental requirement of constructive notice under *N.J.S.A.* 59:4-3(b), namely that the condition could have existed for such a period of time that the public entity should have discovered it." *Carroll v. N.J. Transit,* 366 *N.J.Super.* 380, 388, 841 *A.*2d 465 (App.Div.2004). Unfortunately, the threshold question—whether the County was on constructive notice of the alleged dangerous condition—was side-stepped by the motion court and too expansively determined by the Appellate Division. We therefore vacate both determinations and remand the cause to the Law Division for its consideration of that issue.

In so doing, we return to first principles. When, as here, a motion for summary judgment is made, the party opposing that motion bears the affirmative burden of responding. *See R.* 4:46-2(b). That burden is not optional, *Lyons v. Twp. of Wayne,* 185 *N.J.* 426, 435, 888 *A.*2d 426 (2005), and it cannot be satisfied by the presentation of incompetent or incomplete proofs. *See Shelcusky v. Garjulio,* 172 *N.J.* 185, 200-01, 797 *A.*2d 138 (2002) (explaining that "[t]he very object of the summary judgment procedure then is to separate real issues from issues about which there is no serious dispute" and that "[s]ham facts should not subject a defendant to the burden of a trial"). On remand, then, the motion court is to review the record as presented by the parties and as the motion court, in its discretion, may require that it be supplemented.[7] On that record, the motion court is to determine whether plaintiff's proofs satisfy *all* of the elements required for a

---

[7] Because the issue of the sufficiency of plaintiff's expert report was not explored below, the motion court on remand should allow supplementation limited to the extent it would have allowed had the admissibility or weight of Dr. Kuperstein's report been challenged in the first instance.

claim against a public entity for the alleged dangerous condition of public property.

## IV.

The judgment of the Appellate Division is reversed, the order of the Law Division dismissing plaintiff's complaint with prejudice is vacated, and the cause is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction in this matter.

*For reversal/vacation/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.