**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1799-23

TRACEY LLOYD,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

LIZBETH TRUCKING, LLC,
PABLO TRUCKING, LLC, and
JOSE MENDOZA,

      Defendants-Respondents/
      Cross-Appellants,

and

JAMES RIVER INSURANCE
COMPANY, and USAA
PROPERTY AND CASUALTY,

      Defendants.
_____

Argued April 2, 2025 – Decided April 16, 2025

Before Judges Sumners, Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6650-17.

Timothy Joseph Foley argued the cause for appellant/cross-respondent (Foley & Foley, and Rebenack, Aronow & Mascolo, LLP, attorneys; J. Silvio Mascolo and Tyler J. Hall, of counsel and on the briefs).

Harry D. McEnroe argued the cause for respondents/cross-appellants (Tompkins, McGuire, Wachenfeld & Barry, LLP, attorneys; Harry D. McEnroe, of counsel and on the briefs).

PER CURIAM

After a jury trial, plaintiff Tracey Lloyd appeals from the January 29, 2024 Law Division judgment vacating the $200,000 jury verdict in her favor and dismissing her personal injury automobile negligence complaint against defendants Lizbeth Trucking, LLC, Pablo Trucking, LLC, and Jose Mendoza, pursuant to Rule 4:40-1, or in the alternative, Rule 4:37-2(b), with prejudice due to her expert's failure to make a comparative medical analysis. After reviewing the record, parties' arguments, and applicable legal principles, we reverse and remand for a new trial.

I.

The facts are largely undisputed. On July 23, 2016, plaintiff was stopped in her vehicle at a traffic light in Newark when she was rear-ended by Mendoza, who was operating a dump-truck. Lizbeth Trucking owned the dump-truck that Mendoza was driving for his employer, Pablo Trucking.

Emergency Medical Services (EMS) transported plaintiff from the accident scene to the hospital, as she was experiencing pain in her neck, back, and knees. The hospital released plaintiff the same day, but EMS returned her to the hospital the next day because she was experiencing extreme pain to the same areas. Plaintiff was fifty-one years old at the time of the accident. A pain management doctor and chiropractor treated plaintiff for her injuries, and she participated in physical therapy. After completing MRIs of her lumbar and cervical spine, plaintiff's pain management doctor performed a series of injections and a radiofrequency ablation. A separate physician provided treatment for her knees. According to defendants' expert, multiple doctors recommended surgery for her knees and lower back, but she declined.

Plaintiff had multiple prior accidents and received long-term treatment for her knees and lower back. She had complained of pain to her knees and lower back approximately four months before the present accident. Plaintiff had MRIs of her knees in 2014 and lumbar spine in 2013.

On November 21, 2018, plaintiff amended her personal injury complaint. She alleged "severe and permanent bodily injuries" but did not plead an aggravation of any pre-existing condition. As defendants' dump-truck was a commercial vehicle, the parties did not dispute that the Auto Insurance Cost

3

Reduction Act's (AICRA), N.J.S.A. 39:6A-1.1 to -35, limitation-on-lawsuit threshold, N.J.S.A. 39:6A-8(a) did not apply in this matter. Plaintiff's answers to defendants' interrogatories claimed injuries to her "neck, low[er] back," and knees and asserted that she would "rely upon expert testimony as to the nature and extent of any aggravation or exacerbation of prior pain." Further, she acknowledged injuring her neck and back in an accident approximately twenty years ago, but she maintained throughout the trial she received no medical treatment for her neck prior to the present accident.

On July 12, 2019, plaintiff's medical expert, John Owens, M.D., a board-certified orthopedic surgeon who was the Chief of Orthopedics at Englewood Hospital, authored a causation report relating her neck, lower back, and knee injuries to the accident. The report delineated that he reviewed twenty-four sources of plaintiff's medical records, including prior treatment records. He also examined plaintiff. Dr. Owens opined that plaintiff sustained a cervical herniation and bulges. He also found plaintiff suffered aggravations of her pre-existing injuries to her lower back and knees because she had a "clear progression of her condition on serial MR[Is] . . . of the knees as well as the lumbar spine."

In September 2019, defendants moved for summary judgment arguing Dr. Owens' expert report was a net opinion because his injury conclusions insufficiently addressed and evaluated plaintiff's prior medical records, and he did not consider all of plaintiff's existing medical records. Further, defendants specifically argued Dr. Owens did not provide a sufficient comparative analysis. At the motion hearing, defendants objected to the judge's consideration of Dr. Owens' December 2019 de bene esse deposition testimony, because it occurred after defendants' motion was filed, but then argued Dr. Owens acknowledged at his deposition he never reviewed plaintiff's pre-accident knee MRIs to conduct a comparative analysis. The judge denied the motion, finding plaintiff's expert sufficiently opined she had sustained new injuries based on the herniated discs and defendants' expert's diagnosis. Further, the judge found Dr. Owens' "comparative analysis" was sufficient because he "show[ed] a distinction between pre-existing injuries and the current injuries, notwithstanding the fact that there [were] new injuries." Therefore, the judge found Dr. Owens' opinion was not a net opinion as it was sufficiently supported.

In February 2023, defendants moved for reconsideration, which a second judge also denied. The second judge "looked at th[e motion] with a fresh eye" and found the report was not a net opinion because Dr. Owens "was aware . . .

5

of the MRIs, . . . the pre[-]existing injuries," and reviewed "significant medical records." The judge noted that Dr. Owens had sufficiently found a "clear progression of [plaintiff's] condition on the serial MRI imaging of the knees, as well as [the] lumbar spine, and that the current injuries [we]re causally related to the accident."

The matter proceeded to trial before a third judge. Before trial, defendants moved in limine to bar Dr. Owens from testifying about plaintiff's pre-existing knee injuries as diagnosed in the 2014 radiology reports, because Dr. Owens had failed to review the diagnostic images.[1] The trial judge barred Dr. Owens from testifying about the MRI radiology reports for plaintiff's knees because he had not reviewed the films and therefore was "rel[ying] on the hearsay testimony

---

[1] On appeal, plaintiff references Dr. Owens' de bene esse testimony where he recounted reviewing plaintiff's 2014 MRI films of her knees, which the trial judge reviewed in deciding the motion. The parties have not provided Dr. Owens' unredacted deposition transcript. Rule 2:5-4(a) states in relevant part: "The record on appeal shall consist of all papers on file in the court . . . , with all entries as to matters made on the records of such courts." See also R. 2:6-1(a)(1)(I) (stating the appendix must contain parts of the record "essential to the proper consideration of the issues"). "We are not 'obliged to attempt review of an issue when the relevant portions of the record are not included.'" State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (quoting Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005)).

A-1799-23

of . . . non-testifying doctors."[2]  Defendants also moved in limine for the trial judge to reconsider the denial of their motion to dismiss plaintiff's complaint for failing to provide a comparative medical analysis of plaintiff's injuries.  Defense counsel represented to the trial judge that Dr. Owens' report stated "absolutely nothing about . . . [plaintiff's] prior history" and argued his report was a net opinion.  The trial judge denied defendants' motion as untimely under R. 4:25-8.[3]

At trial, plaintiff testified that she suffered severe pain in her neck, back, and knees immediately after the accident and received treatment for her injuries.  Plaintiff explained that she had previously injured her neck and back in a car accident when she was about seven to ten years old.  She also admitted that she fell down a flight of stairs in 2015, injuring her ankle and other body parts.  She

---

[2]  See N.J.R.E. 808 (stating that an "[e]xpert opinion that is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless . . . circumstances involved in rendering the opinion tend to establish its trustworthiness" and permitting a court to consider "the complexity of the subject matter").

[3]  Rule 4:25-8 defines a motion in limine "as an application returnable at trial for a ruling regarding the conduct of the trial, . . . which motion, if granted, would not have a dispositive impact on a litigant's case."  The Rule expressly states that motions in limine do not include "an application to bar an expert's testimony in a matter in which such testimony is required as a matter of law to sustain a party's burden of proof."

A-1799-23

refuted that she had a "long history of lower back, . . . knee[], and neck pain" but stated that she had "suffered from back pain from time to time." Plaintiff insisted that she did not have "chronic neck pain" or receive "neck treatment." She also clarified that before the 2016 accident, she never had: a cervical MRI; a medical diagnosis of a cervical herniation; or a cervical injection. While she admitted to having some neck pain in the past, plaintiff testified that it did not require treatment, as the neck pain resolved. After the present accident, she asserted that she received a cervical spine injection.

During cross-examination, defense counsel asked plaintiff about her March 2015 neck x-ray, but she was adamant that she did not have a neck x-ray. Thereafter, defense counsel conceded that "actually, there was no x-ray of your neck." Plaintiff acknowledged that she had some neck pain after accidents in the early 1990s and 2004, but she maintained there was no diagnostic tests of her neck or continuing pain. She maintained that she suffered no neck pain before the accident and had no neck treatment. When defense counsel asked plaintiff whether she "injured [her] neck before and felt pain in [her] neck before . . . this accident," she responded, "[N]o long-term pain. Yes."

A-1799-23

At trial, plaintiff's presented Dr. Owens' de bene esse deposition testimony, pursuant to Rule 4:14-9. He opined that while plaintiff "did have some pre[-]existing conditions affecting her low back, as well as her knees," she also had "[a] new injury to her neck." He explained that in the field of orthopedics, the most objective evidence to determine an injury would be diagnostic imaging tests like x-rays and MRIs. During Dr. Owens' exam of plaintiff, he found "tenderness and spasm in the musculature around the cervical and lumbar spine." Dr. Owens reviewed plaintiff's cervical MRI and found "at multiple levels throughout the spine, . . . the column of the spinal cord [wa]s . . . infringed upon by multiple bulges, and [she had] a herniation down at C6-7," all of which were causally related to the accident. Dr. Owens ultimately found plaintiff suffered permanent "bulges in the cervical spine at C3-4, C4-5, C5-6; and [a] herniated disc at C6-7."

Dr. Owens testified regarding plaintiff's prior medical records and recognized plaintiff had previously complained about her "low back[] and her knees." In medical terms, he defined an aggravation as "typically imply[ing] that there were pre[-]existing conditions, and something changed." He compared plaintiff's 2013 lumbar MRI, which "mainly . . . [had] facet osteoarthritis" with the lumbar bulging process that he discerned from viewing

9

plaintiff's 2016 lumbar MRI. He explained her bulging disc condition and stated, "[T]hat [disc] prominence [wa]s new." Dr. Owens found plaintiff's new lumbar disc bulging prominence was causally related to the accident "[b]ased on [plaintiff's] new onset of pain[] and aggravation of her condition." He also found "[s]he ha[d] [an] . . . aggravation of her pre[-]existing condition with new bulges now at L3-4[] and L4-5[,] [a]nd she ha[d] the meniscal tears in her left and right knee."

On cross-examination, Dr. Owens confirmed he reviewed twenty-four different sources of plaintiff's medical records. He conceded he was unaware whether plaintiff had any prior back injections before the accident.

At the close of plaintiff's case, defendants moved for judgment at trial pursuant to Rule 4:40-1, or alternatively involuntary dismissal at trial under Rule 4:37-2(b). The trial judge reserved decision. After the jury rendered a verdict in favor of plaintiff for $200,000, the trial judge granted defendants' motion, stating:

> I cannot see . . . in light of . . . [plaintiff's] long chronic pain history, how it is that a reasonable juror could conclude from the testimony offered that there were . . . these conditions that preexisted this accident but there[ is] no commentary whatsoever within the report or the testimony of Dr. Owens to enable a reasonable juror to conclude and to . . . be able to state what . . . injuries were proximately caused by the

accident in question versus the pre[-]existing conditions.

. . . .

. . . Plaintiff did[ not] indicate in any way the degree to which . . . [the] pre[-]existing conditions were contributed to and to what degree . . . [p]laintiff's physical condition [are] today.

Plaintiff's counsel objected to the trial judge's decision, requesting he reconsider based on Dr. Owens' uncontested testimony that plaintiff sustained a new "clear cervical disk herniation." Counsel argued to the trial judge that his decision was a misapplication of the facts and the law. The trial judge found plaintiff failed to demonstrate "any injury was proximately caused by this particular accident."

On appeal, plaintiff argues that: the trial judge erred in overturning the jury verdict and entering judgment in favor of defendants; Dr. Owens offered a properly founded opinion; and the trial judge erred by excluding portions of Dr. Owens' de bene esse deposition testimony. Defendants cross-appeal, arguing their summary judgment motion was erroneously denied and reconsideration of the denial of the motion should have been granted. Defendants argue the first judge wrongly considered Dr. Owens' de bene esse deposition testimony in determining whether he provided a net opinion.

11

## II.

"In reviewing a motion for involuntary dismissal under Rule 4:37-2(b) or a motion for judgment under Rule 4:40-1, we apply the same standard that governs the trial courts." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (first citing ADS Assocs. Grp. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014); and then citing Frugis v. Bracigliano, 177 N.J. 250, 269 (2003)). Rule 4:40-1 provides that a motion for judgment may be made "either at the close of all the evidence or at the close of the evidence offered by an opponent." A motion for involuntary dismissal at the close of plaintiff's case, a motion for judgment at the close of all evidence under Rule 4:40-1, and a motion for judgment notwithstanding the verdict under Rule 4:40-2(b) are judged "by the same evidential standard," which is "[i]f, accepting as true all the evidence which supports the position of the party defending against the motion and according [them] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied." Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)); Zive v. Stanley Roberts, Inc., 182 N.J. 436, 441-42 (2005). "The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature

or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Sons of Thunder v. Borden, Inc., 148 N.J. 396, 415 (1997) (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)).

"A jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.'" Id. at 501 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)). "The presumption of correctness that attaches to a damages award is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is 'a miscarriage of justice.'" Ibid. (quoting Baxter, 74 N.J. at 596).

We recognize the fundamental principle that jury trials are a bedrock of our justice system and the factfinding functions of a jury deserve a high degree of judicial deference. See, e.g., Caldwell v. Haynes, 136 N.J. 422, 431-32 (1994). The motion for judgment "standard[s] ensure[] that appellate tribunals will not overstep their bounds by usurping the jury's task of assessing the credibility of the witnesses." Sons of Thunder, 148 N.J. at 415. Such motions "should only 'be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.'" Smith, 225 N.J. at 397 (quoting Godfrey v. Princeton Theological

13

<u>Seminary</u>, 196 N.J. 178, 197 (2008)). Stated differently, "[t]he jury's factual determination will be disturbed only if we find that the jury could not have reasonably used the evidence to reach its verdict." <u>Sons of Thunder</u>, 148 N.J. at 415. A court is not free to "substitute [its] judgment for that of the jury merely because [it] would have reached the opposite conclusion; [it] is not . . . a decisive juror." <u>Cuevas v. Wentworth Grp.</u>, 226 N.J. 480, 501 (2016) (quoting <u>Baxter</u>, 74 N.J. at 598).

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." <u>Townsend v. Pierre</u>, 221 N.J. 36, 52 (2015). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" <u>Townsend</u>, 221 N.J. at 53-54 (alteration in original) (quoting <u>Polzo v. County of Essex</u>, 196 N.J. 569, 583 (2008)). Experts are required to "give the why and wherefore that supports the opinion, rather than a mere conclusion." <u>Id.</u> at 54 (quoting <u>Borough of Saddle River v. 66 E. Allendale, LLC</u>, 216 N.J. 115, 144 (2013)) (internal quotation marks omitted). They must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the

methodology are reliable."  Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

## III.

Plaintiff contends the trial judge erred in overturning the jury verdict because Dr. Owens' opinion that plaintiff suffered causally related injuries to her neck, lower back, and knees was sufficiently supported by credible medical evidence.  Plaintiff specifically argues the judgment for defendants should be reversed because:   plaintiff was not "required to provide a comparative analysis," Dr. Owens did in fact provide a comparative analysis, which was not a net opinion; and plaintiff sufficiently demonstrated "new injuries."  After a careful review of the record, we are constrained to reverse, as the trial judge erred in finding that plaintiff's expert failed to present sufficient credible medical evidence that she sustained an injury proximately caused by the accident.  While we discern Dr. Owens provided sufficient credible medical evidence supporting plaintiff's new neck injury and an aggravation of her pre-existing lower back injury, through a comparative medical analysis, he failed to provide a sufficient comparative analysis demonstrating the accident proximately caused an aggravation of her pre-existing injuries to her knees.  We

15

therefore conclude a remand for a new trial limited to plaintiff's neck injury and aggravation of her pre-existing lower back injury is necessary.

A plaintiff bears the burden to prove the element of causation through "introduc[ing] evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." Davidson v. Slater, 189 N.J. 166, 185 (2007) (quoting Reynolds v. Gonzalez, 172 N.J. 266, 284 (2002)). Further, proximate cause is ordinarily a fact issue to be resolved by a jury. See Perez v. Wyeth Lab'ys Inc., 161 N.J. 1, 27 (1999). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Townsend, 221 N.J. at 60-61 (quoting Davidson, 189 N.J. at 185).

In Davidson, our Supreme Court stated, "The need for a plaintiff to produce a comparative medical analysis remains dependent on traditional principles of causation and burden allocation applicable to tort cases generally." 189 N.J. at 184. It is well-established that "[c]ausation is germane to the plaintiff's theory of aggravation of a pre-existing injury or new independent injury to an already injured body part." Id. at 185. "When a plaintiff alleges aggravation of pre-existing injuries as the animating theory for the claim, then

plaintiff must produce comparative evidence to move forward with the causation element of that tort action." Id. at 170. "When a plaintiff does not plead aggravation of pre-existing injuries, a comparative analysis is not required to make that demonstration." Id. at 170. "If defendant raises a genuine factual issue about the causation of plaintiff's claimed injuries by pointing to other injuries the plaintiff may have experienced, that disputed issue of causation is for the fact-finder to decide," except in "those unusual instances when no reasonable fact-finder could conclude that the permanent injury was caused by the subject accident." Ibid.

In the present case, it is undisputed that plaintiff: did not plead an aggravation of a pre-existing injury; was not subject to a limitation-on-lawsuit threshold; alleged new injuries that were causally related to the accident; and had a history of treatment for injuries to her lower back and knees. At trial, plaintiff acknowledged aggravating pre-existing injuries to her lower back and knees but claimed the conditions were not causing any symptoms at the time of the 2016 accident. While plaintiff does not refute that she had "chronic" injuries to her lower back and knees warranting interventional treatment before the 2016 accident, she specifically argues that sufficient credible medical evidence supported a new neck injury causally related to the accident. Defendants argue

A-1799-23

the trial judge correctly overturned the verdict because plaintiff failed to provide a detailed comparative analysis based on her medical records and admissions to suffering "long-standing back, neck and bilateral knee pain." Again, acknowledging the jury's determination is afforded deference, we conclude each of plaintiff's alleged injuries must be reviewed separately to discern if she presented sufficient credible medical evidence to show that the present accident proximately caused each of the specific injuries presented.

## A.

### Neck Injury

Relevantly, regarding her neck injury, Dr. Owens found "annular bulges [at] C3-4, C4-5, C5-6 and [a] midline disc herniation C6-7" after "review[ing] the actual films as well as the radiologist's report" of the "MRI of . . . [plaintiff's] cervical spine, date[d] . . . September 20, 2016." Dr. Owens reviewed twenty-four separate sources of plaintiff's medical records, which did not contain any prior diagnostic tests of plaintiff's neck. He reviewed her treatment "[r]ecords . . . [from] Jersey City Pain Center" from four months before the present accident. The Pain Center records indicated that she only reported "pain in [her] knees and lower back," and her physical examination revealed that her neck was "[s]upple" and "[n]on-tender." After reviewing plaintiff's medical

18

records, including her 2016 cervical MRI film, Dr. Owens testified within a reasonable degree of medical probability that plaintiff sustained "a new injury to her neck." His opinion was supported by credible medical evidence and was not a net opinion; therefore, there was sufficient evidence for the jury to consider regarding plaintiff's neck injury to reach a verdict.

Addressing defendants' argument that plaintiff failed to provide a required comparative medical analysis of her cervical injury, no objective medical evidence in the record demonstrates an unresolved pre-existing neck injury. In support of their argument, defendants reference that Dr. Owens failed to review "Dr. Shan Nagendra['s] . . . . November 2013 exam [record]," which provided the "physician's impressions were 'cervical sprain and strain, radiculopathy, disc herniation.'" A review of the referenced record clearly demonstrates it is a form list of possible medical injuries for the doctor to underline or circle noted medical "impressions." The doctor underlined number four on the list, indicating "Lumbar Sprain & Strain, Radiculopathy, Disc Herniation." The list included the categories of: "Insomnia"; "Thoracic Sprain & Strain"; "Radiculopathy"; "Disc Herniation"; "Post Traumatic [Headache]"; "Cervical Sprain & Strain, Radiculopathy, Disc Herniation"; and "Others." The doctor did not underline or circle any other listed medical injury impressions. Further, the

19

same report indicated plaintiff's symptoms were "low[er] back pain" and "knees." Defendants cited no medical record illustrating objective medical evidence of a pre-existing neck injury that Dr. Owens failed to consider. Defendants' characterization of the medical records, and similarly, Dr. Owens' testimony, are without merit.

Plaintiff's acknowledgement that she had some neck pain years earlier does not alone trigger the necessity of an expert's comparative analysis. If we were to accept defendants' conflated application of Davidson, plaintiffs would be required to produce a comparative analysis for any degree of pain or injury to a body part—even if the injury resolved without objective testing or interventional treatment. To the contrary, we do not understand Davidson to place such a burden on plaintiffs. Defendants unequivocally "possesse[d] the right of demonstrating by competent evidence that that injury 'could' have been caused, wholly or partly, by an earlier accident or by a pre-existing condition." Davidson, 189 N.J. at 187 (quoting Paxton v. Misiuk, 34 N.J. 453, 460-61 (1961)). Defendants failed to demonstrate a sufficient pre-existing neck injury. We therefore discern defendants' argument lacks merit. For these reasons, we reverse and remand for a new trial on the issue of plaintiff's neck injury.

A-1799-23

B.

Lower Back Injury

Further, concerning plaintiff's pre-existing back injury, Dr. Owens' report and testimony provided that he had reviewed "the actual films" of plaintiff's lumbar spine MRIs from before and after the accident. His report highlighted that plaintiff's 2013 lumbar spine MRI showed "facet osteoarthritis mostly in the lower portions of her lumbar spine," and, by contrast, her 2016 MRI demonstrated a "bulging process . . . occurring at two of the lower discs." He explained that "[t]he damage to the soft tissues of the musculoskeletal system heals with fibrous scar tissue, which is never as flexible nor as elastic as the original tissue." He also acknowledged plaintiff had "a prior motor vehicle accident in 2004, during which time she injured her low back and had prior treatment which included a radiofrequency ablation." Dr. Owens testified that plaintiff sustained an aggravation of her pre-existing lumbar spine injury and illustrated his conclusions by comparing her MRI films. Dr. Owens sufficiently found plaintiff had a "clear progression" of her "lumbar spine" injury and noted from the 2016 MRI "findings of broad-based disc bulges at L3-4 and L4-5" that had not changed as evidenced by a subsequent 2018 MRI. He provided the comparison of the lumbar spine MRIs showed that a "prominence [wa]s new."

A-1799-23

We agree with plaintiff that Dr. Owens "performed a proper comparative analysis" of plaintiff's lumbar spine, which supported the jury's verdict that the accident proximately caused an aggravation of her lumbar spine injury. Dr. Owens reviewed medical records and conducted a sufficiently detailed comparative analysis of plaintiff's lumbar spine MRIs. Dr. Owens' narrative report and testimony satisfied the well-established precedent that an expert's opinion must be "grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (quoting Polzo, 196 N.J. at 583). Defendants' arguments that Dr. Owens "completely failed to acknowledge plaintiff's long history of prior related back . . . complaints" and "fell well short of providing the requisite comparative analysis" are unsupported. Further, the trial judge's finding that Dr. Owens' opinion regarding prior injuries "only mention[ed] the fact that he read reports" was misplaced. We conclude there was sufficient credible medical evidence and testimony supporting that the present accident proximately caused plaintiff's sustained lumbar spine injury for the jury's consideration.

We also are unpersuaded by defendants' argument that Dr. Owens' opinion failed to provide the sufficient "degree" of plaintiff's lumbar aggravation injury. Davidson does not require a plaintiff's medical expert's comparative analysis determination of an aggravation to require mathematical specificity or an exact degree represented by a numerical percentage. "To prevail in the ordinary aggravation of injury case, . . . plaintiffs must separate those damages caused by a particular defendant's negligence from any prior or post injuries or conditions." Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004). An expert's testimony should not be excluded merely "because it fails to account for some particular condition or fact which the adversary considers relevant." Townsend, 221 N.J. at 54 (quoting Creanga v. Jardal, 185 N.J. 345, 360 (2005)). Thus, we also reverse and remand for a new trial on the issue of plaintiff's aggravation of her lower back injury.[4]

---

[4] We note that the trial judge provided the model jury charge for an aggravation of a pre-existing injury, referencing plaintiff's "knees, neck and spine." Plaintiff and Dr. Owens testified to an aggravation of plaintiff's pre-existing injury to her lumbar spine. On remand, we leave to the sound discretion of the new trial judge to tailor the aggravation charge to reflect the specific evidence presented regarding each injury alleged. See Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 75 (2024) ("A judge must explain 'the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case.'" (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002))); see also Ponzo v. Pelle, 166 N.J. 481, 491-92 (2001)

C.

Knee Injuries

We next address plaintiff's arguments regarding the alleged injuries to her knees. Specifically, plaintiff contends the trial judge wrongly excluded Dr. Owens' testimony regarding her pre-existing knee injuries, as evidenced by her 2014 MRIs, and that the jury heard sufficient credible medical evidence supporting an aggravation of her knee injuries. Plaintiff argues Dr. Owens reviewed the 2014 MRI films in addition to the reports. A review of the record does not support plaintiff's assertion.

We first note that Dr. Owens' report does not indicate that he reviewed the films, in contrast to his report clearly denoting a comparative review of her prior lumbar films. Dr. Owens acknowledged during his deposition that he had "only reviewed the MRI reports." As Dr. Owens' report and testimony did not clearly establish that he had reviewed plaintiff's 2014 MRI films, we agree with the trial judge's decision to bar Dr. Owens' testimony regarding plaintiff's pre-existing knee injuries. The trial judge correctly precluded Dr. Owens from offering an

(stating that although not "every single case requires finely diced interrogatories," "[w]here there are multiple allegations, multiple interrogatories are not only the best way to focus the jury's attention on the details of the case but also to ascertain, with some degree of specificity, what the jury has actually determined").

A-1799-23

aggravation opinion that relied on the separate radiologist knee reports. The reports are complex medical evaluations of plaintiff's 2014 MRIs, and the prohibition on net opinions "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend, 221 N.J. at 53-54 (quoting Polzo, 196 N.J. at 583). This principle requires "experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable.'" Id. at 55 (quoting Landrigan, 127 N.J. at 417). Because it was undisputed at trial that plaintiff had medically substantiated pre-existing injuries to her knees, we conclude that plaintiff presented insufficient proof to the jury demonstrating defendants proximately caused her alleged knee injuries. Therefore, on remand, plaintiff's alleged aggravation of her knee injuries is not subject to a new trial.

As we have concluded plaintiff's expert's opinion provided sufficient objective credible medical evidence supporting her new neck injury and an aggravation of her pre-existing lower back injury, we need not address defendants' cross-appeal. The judgment in favor of defendants is vacated and the matter is remanded for a new trial, limited to plaintiff's neck and lower back injury, consistent with this opinion.

A-1799-23

To the extent that we have not addressed the parties' remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1799-23